UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

ANTHONY BOLES,

        Petitioner,                        Case Number: 21-cv-10485
                                                          Honorable Paul D. Borman

v.

MICHAEL BURGESS,[1]

        Respondent.
_____/

**OPINION AND ORDER DENYING PETITION FOR WRIT OF HABEAS CORPUS, DENYING CERTIFICATE OF APPEALABILITY, AND GRANTING LEAVE TO PROCEED IN FORMA PAUPERIS ON APPEAL**

Anthony Boles has filed a *pro se* petition for a writ of habeas corpus under 28 U.S.C. § 2254. Boles, who is in the custody of the Michigan Department of Corrections, challenges his convictions for larceny in a building and assault and battery. He alleges that police failed to provide him with *Miranda* warnings and that a cellphone seized at the time of his arrest should have been suppressed as a fruit of the poisonous tree.

For the reasons discussed, the Court denies the petition and denies a certificate of appealability. The Court grants Petitioner leave to proceed *in forma pauperis* on appeal.

---

[1] The proper respondent in a habeas action is the petitioner's custodian. *See* Rule 2(a), Rules Governing Section 2254 Cases, 28 U.S.C. § 2254. Petitioner is presently incarcerated at the Oaks Correctional Facility where Michael Burgess is the Warden. The Court directs the Clerk of Court to amend the case caption to substitute Michael Burgess as the respondent.

**I.     Background**

The Michigan Court of Appeals summarized the testimony leading to Boles' convictions as follows:

> Defendant was accused of stealing Sheri Wenglikowski's cellular telephone from her office at St. Mary's Hospital. Defendant was also charged with assaulting David Revard, St. Mary's head of security, after Revard attempted to detain defendant during his investigation. Wenglikowski testified that on November 7, 2017, she left her cell phone behind in her office when she stepped out to visit another part of the hospital; it was missing when Wenglikowski returned to her office. St. Mary's surveillance video showed that a suspect entered the hospital, went into Wenglikowski's general office area, and then left. The video did not show the suspect actually entering Wenglikowski's office because it was outside the camera range.
>
> Wenglikowski testified that she used a telephone-tracking application to locate her cell phone. Wenglikowski contacted St. Mary's security about the incident and gave Revard the location of her phone based on the tracking application. Revard reviewed the surveillance video and contacted the police. Police Officer Jeremey Holden was dispatched, and Revard and Officer Holden unsuccessfully attempted to retrieve the phone from the address Wenglikowski provided. We note that, like Revard, Officer Holden reviewed the video footage from St. Mary's. Subsequently, Wenglikowski called Revard and told him that the tracking application indicated that her cell phone was located approximately two blocks from St. Mary's. While still on the phone with Wenglikowski, Revard and St. Mary's Security Officer Cole Thompson traveled to the location Wenglikowski provided.
>
> At the location, Revard and Thompson came into contact with defendant. They tried to get defendant to stop, but defendant continued to walk away from them. Revard testified that he then attempted to detain defendant, that defendant became verbally abusive, and that defendant punched Revard. Wenglikowski, who had remained on the line with Revard, pushed an alert that made her phone ring, and Revard and Thompson heard a phone ring. Revard reached into defendant's pocket and found Wenglikowski's cell phone. Officer Holden then arrived at the scene, and after defendant requested a lawyer, defendant voluntarily expressed that he had found the cell phone and was trying to return it.

> \*\*\*
>
> At trial, Revard testified about the surveillance-video footage. Revard indicated that he reviewed a higher-quality version of the surveillance footage before it was copied onto a CD-ROM. Revard testified about what the video footage depicted, including the layout of the building and where the suspect was located in the building. Revard explained that still photographs were created from the footage. Additionally, on the basis of his review of the video footage, Revard testified that the suspect was a black male with a dark mustache and wore a black "hoodie." Revard, as he provided narration while the video was played, did not give an opinion that it was indeed defendant in the video footage … Revard did testify that when he encountered defendant and attempted to detain him, it was on the basis of Revard's belief that defendant was the same person visible in the video. During Officer Holden's testimony, he explained that when he arrived at the scene where defendant was apprehended, he recognized defendant from the surveillance video.

*People v. Boles*, 2020 WL 1816006, at \*1–2 (Mich. Ct. App. Apr. 9, 2020).

Following a jury trial in Saginaw County Circuit Court, Boles was convicted of larceny in a building, Mich. Comp. Laws § 750.360, and assault and battery, Mich. Comp. Laws § 750.81. He was sentenced as a fourth habitual offender, Mich. Comp. Laws § 769.12, to 30 months to 15 years for the larceny conviction and 93 days for the assault and battery conviction. *Id.* at \*1.

Boles filed an appeal of right in the Michigan Court of Appeals, claiming, through counsel, that the trial court improperly allowed two witnesses to offer lay-opinion testimony identifying him as the suspect seen in video footage. In a *pro per* supplemental brief, Boles argued that the cellphone should have been suppressed as a fruit of the poisonous tree because police failed to advise him of his *Miranda* rights. The Michigan Court of Appeals affirmed Boles' convictions. *Id*. Boles filed an application for leave to appeal with the Michigan Supreme Court raising the *Miranda*-related claim. The Michigan

3

Supreme Court denied leave to appeal. *People v. Boles*, 506 Mich. 942 (Mich. Oct. 27, 2020).

Boles then filed this petition for a writ of habeas corpus raising a single claim:

> It is undisputed that Defendant, Mr. Boles, was in a custodial situation which mandated *Miranda* warnings. *Miranda* warnings are required where there is a formal arrest or restraint on freedom of movement of the degree associated with a formal arrest. The cell phone should have been suppressed as fruit of the poisonous tree. Those warnings were not administered. When police ask questions of a suspect in custody without administering the required warnings *Miranda* dictates that the evidence received be excluded from evidence at trial in the Government's case. A *Miranda* violation is inadmissible as fruit of the poisonous tree.

Respondent filed an answer to the petition maintaining that Boles' claim is meritless. (ECF No. 10). Boles has filed a reply brief. (ECF No. 12).

## II.    Standard

The Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA") requires federal courts to uphold state court adjudications on the merits unless the state court's decision (1) "was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States," or (2) "was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d).

A decision is "contrary to" clearly established federal law if the state court arrives at a conclusion opposite to that reached by the Supreme Court on a question of law, or if the state court decides a case differently than the Supreme Court has on a set of materially indistinguishable facts. *Williams v. Taylor*, 529 U.S. 362, 405-406 (2000). An

"unreasonable application" occurs when "a state-court decision unreasonably applies the law of [the Supreme Court] to the facts of a prisoner's case." *Id.* at 409.

A "state court's determination that a claim lacks merit precludes federal habeas relief so long as fairminded jurists could disagree on the correctness of the state court's decision." *Harrington v. Richter*, 562 U.S. 86, 101 (2011) (quotation omitted). Under § 2254(d), "a habeas court must determine what arguments or theories supported or . . . could have supported, the state court's decision; and then it must ask whether it is possible fairminded jurists could disagree that those arguments or theories are inconsistent with the holding in a prior decision" of the Supreme Court. *Id.* Habeas relief may be granted only "in cases where there is no possibility fairminded jurists could disagree that the state court's decision conflicts with" the Supreme Court's precedents. *Id.* A "readiness to attribute error [to a state court] is inconsistent with the presumption that state courts know and follow the law." *Woodford v. Viscotti*, 537 U.S. 19, 24 (2002).

**III. Discussion**

Boles seeks habeas relief on the ground that police failed to advise him of his rights under *Miranda v. Arizona*, 384 U.S. 436 (1966), and that the cellphone should have been suppressed as a fruit of the poisonous tree. The Michigan Court of Appeals denied this claim on the ground that Boles "has simply not established that the cell phone was a 'physical fruit' of an unwarned coerced statement." *Boles*, 2020 WL 1816006 at *6.

The Fifth Amendment, which is made applicable to the states by the Fourteenth Amendment, protects an accused from compulsory self-incrimination. Before conducting a custodial interrogation, police must advise a suspect that he has the right to remain silent,

5

that any statement may be used against him, and that he has the right to retained or appointed counsel. *Miranda*, 384 U.S. at 479. If a suspect invokes his right to counsel, the suspect may not be "subject to further interrogation by the authorities until counsel has been made available to him, unless the accused himself initiates further communication, exchanges, or conversations with the police." *Edwards v. Arizona*, 451 U.S. 477, 484–85 (1981). Interrogation means express questioning or its "functional equivalent," which is defined as "any words or actions on the part of the police (other than those normally attendant to arrest and custody) that the police should know are reasonably likely to elicit an incriminating response from the suspect." *Rhode Island v. Innis*, 446 U.S. 291, 301 (1980).

Here, the record demonstrates that Boles was not interrogated. When Officer Holden arrived on the scene, Boles was in handcuffs and sitting on the ground. (ECF No. 11-8, PageID.387.) Holden could not recall whether he started reading Boles his rights or asked if Boles was willing to make a statement. (*Id.*) Boles said that he was not willing to make a statement and requested a lawyer. (*Id.*) Holden testified that Boles then made a few unsolicited statements, including that Boles had just found the phone and was trying to return it. (*Id.*) Nothing in the record would support a finding that Boles was interrogated. If there is no custodial interrogation, "the requirement to recite the *Miranda* warnings is not triggered and the analysis is at an end." *United States v. Woods*, 711 F.3d 737, 740 (6th Cir. 2013). Because Boles' statement about the phone was spontaneous and volunteered it was not made in violation of his right to be free from self-incrimination.

Even if Boles was subjected to an unwarned interrogation, evidence that the cellphone was in his pocket was properly admitted. The cellphone was not obtained because of any statement made by Boles. Instead, it was discovered because Revard heard it "ping" and retrieved it from Boles' pocket. Additionally, failure to give *Miranda* warnings does not require suppression of the physical fruits of an unwarned voluntary statement because *Miranda* is concerned with communications and testimony, not physical evidence. *See United States v. Patane*, 542 U.S. 630, (2004) (holding that the physical fruit of unwarned but voluntary statements does not have to be suppressed).

The Michigan Court of Appeals' denial of this claim was not contrary to, or an unreasonable application of, clearly established federal law. Habeas relief is denied.

## IV. Certificate of Appealability and *In Forma Pauperis*

Federal Rule of Appellate Procedure 22 provides that an appeal may not proceed unless a certificate of appealability (COA) is issued under 28 U.S.C. § 2253. Rule 11 of the Rules Governing Section 2254 Proceedings now requires that the court "must issue or deny a certificate of appealability when it enters a final order adverse to the applicant."

A COA may be issued "only if the applicant has made a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). The substantial showing threshold is satisfied when a petitioner demonstrates "that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong." *Slack v. McDaniel*, 529 U.S. 473, 484 (2000).

In this case, the Court concludes that reasonable jurists would not debate the Court's conclusion that relief is unwarranted. Therefore, the Court denies a certificate of appealability.

The standard for granting an application for leave to proceed *in forma pauperis* on appeal is not as strict as the standard for certificates of appealability. *See Foster v. Ludwick*, 208 F.Supp.2d 750, 764 (E.D. Mich. 2002). While a certificate of appealability requires a substantial showing of the denial of a constitutional right, a court may grant *in forma pauperis* status on appeal if it finds that an appeal is being taken in good faith. *See id.* at 764-65; 28 U.S.C. § 1915(a)(3); Fed. R. App. 24 (a). Although jurists of reason would not debate the Court's resolution of the petition, an appeal could be taken in good faith. Therefore, Boles may proceed *in forma pauperis* on appeal.

**V.     Conclusion**

For the reasons stated above, the petition for a writ of habeas corpus is **DENIED**. The Court also **DENIES** a certificate of appealability.

The Court **ORDERS** the case caption amended to substitute Michael Burgess as the respondent.

The Court finds Petitioner may proceed on appeal *in forma pauperis* because an appeal could be taken in good faith. 28 U.S.C. § 1915(a)(3).

SO ORDERED.

s/Paul D. Borman
PAUL D. BORMAN
UNITED STATES DISTRICT JUDGE

Dated: December 14, 2023